**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KASIDEY KEMP, ) | |
| ) | |
| Plaintiff, ) | No. 1:19-CV-07637 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| KICKERT SCHOOL BUS LINES, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Kasidey Kemp brings this *pro se* lawsuit against her former employer, Kickert School Bus Lines, Inc., for a hostile work environment and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and for intentional infliction of emotional distress.[1] R. 21, Am. Compl.[2] Both Kickert and Kemp have moved for summary judgment. For the reasons discussed in the Opinion, the Court grants Kickert's motion for summary judgment on the federal claims; relinquishes jurisdiction over the emotional-distress claim; and denies Kemp's cross-motion.

**I. Background**

The facts narrated here are undisputed unless otherwise noted. In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith*

---

[1]This Court has federal question jurisdiction over the Title VII claim under 28 U.S.C. § 1331, and supplemental jurisdiction under the state law claim under 28 U.S.C. § 1367.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

*Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates Kemp's summary judgment motions, Kickert gets the benefit of reasonable inferences; conversely, when evaluating Kickert's filing, the Court gives Kemp the benefit of the doubt.

Kickert provides school transportation and charter services for the south suburbs of Chicagoland and northwest Indiana. DSOF ¶ 2.[3] Kemp began working for Kickert in August 2018 as a school bus monitor. R. 21, Am. Compl. ¶¶ 3, 5. Kemp's last day at Kickert was in mid-March 2020, when she was furloughed due to the COVID-19 pandemic, and she received continuous pay until the end of April 2020. DSOF ¶ 67.

Kemp's claims arise out of incidents involving co-workers Oscar Foster and Jeffrey Williams, as well as the response to those incidents by Kickert Manager, Debbie Cipkar. DSOF ¶ 20; R. 58-1 at 75, Def's. Exh. 2, Kasidey Kemp Dep. at 99:15-24.

### A. Oscar Foster

On October 29, 2018, Oscar Foster, a male bus driver, pressed on Kemp's mid and lower back without her consent while she was bent over fixing her pant cuffs. DSOF ¶ 20. On the same morning that Foster did that, Kemp reported the touching to Cipkar. PSOF ¶ 1; R. 58-1, Def's. Exh. 1, Steve Miller Decl. ¶ 4. Between October 29 and November 1, 2018, Cipkar, along with Kickert Human Resources Director

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Kickert's (Defendant's) Statement of Undisputed Facts (R. 58); "PSOF" for Kemp's (Plaintiff's) Statement of Facts (R. 60-1 at 14); Pl. Resp. DSOF for Kemp's Response to the DSOF (R. 60-1 at 1); and Def. Reply Pl. Resp. DSOF ¶ 31 (R. 65).

2

Steve Miller, collected written statements and interviewed witnesses of the incident, including Foster and Kemp. Miller Decl. ¶¶ 5, 6. The next day, Kickert issued Foster a final warning for violating Kickert's sexual harassment policy. DSOF ¶ 25. The description stated:

> A complaint was brought to our attention regarding an incident in the breakroom on Monday, October 29th, 2018. It was stated that there was unwelcome touching of another employee by you. After an investigation, we have found the complaint to be creditable and a violation of policy did occur.

R. 61 at 544, Pl's. Exh. 9, Empl. Corrective Action Rep. Kickert also issued a three-day suspension against Foster (which applied November 6 through November 8), retrained him, and reiterated the policy to him. DSOF ¶ 25; R. 61 at 3, Pl's. Exh. 1, Steve Miller Dep. at 66:10–15.

Kemp also complained that, on November 28, 2018, when she was in the driver's room, Foster entered the room, sat in her vicinity, and made direct eye contact with her. DSOF ¶ 36; Miller Dep. at 94:16–96:1. Kickert investigated this report by interviewing a witness to the incident. DSOF ¶ 37; R 61 at 425, Pl's. Exh. 3, Crystal Drew Dep. at 67:1–69:14. The witness, Crystal Drew, reported that Foster did not look over to Kemp, and Drew believed that Foster was not aware that Kemp was in the driver's room. *Id*. Based on this report, Kickert determined that Foster did not violate its policies. DSOF ¶ 38, Miller Dep. at 96:2–97:19; 98:16–23; 98:24–99:7. Sometime in late 2018, Kemp voluntarily requested that her schedule be changed to the "AM shift" only, which was granted. DSOF ¶ 39; Miller Decl. ¶ 11.

Between February 22, 2019, to March 18, 2019, Kemp filed three complaints concerning allegations that Foster hugged other women in front of Kemp while "smiling and staring" at Kemp. Am. Compl. ¶¶ 44–49; DSOF ¶¶ 47, 49–50. Kickert investigated the complaints. DSOF ¶¶ 48, 51. After investigating the February 22 complaint, Kickert instructed Foster to "be more aware" and "stay away from" Kemp. Miller Decl. ¶ 16. Kickert did not find additional evidence of Foster's misconduct after investigating the March 4 and March 18 complaints. DSOF ¶¶ 51, 55; Miller Decl. ¶ 21. Nevertheless, Miller instructed Kickert Manager Cipkar to keep a member of management in the driver's room to monitor the area. Miller Dep. at 82:5–20.

### B. Jeffrey Williams

On December 21, 2018, Jeffrey Williams, a male bus driver, approached Kemp, "tapped her on the arm, and said 'Good Morning!'" Pl. Resp DSOF ¶ 31; Def. Reply Pl. Resp. DSOF ¶ 31. Williams then stepped back, with both of his hands raised up, and said sarcastically, "Oh, I'm sorry. I shouldn't have done that! You might file a sexual harassment case against me." and then walked away laughing. *Id*. Williams approached Kemp and her mother, Carla Yuknis, later that morning in the company parking lot, and told them that "Men and women are different. Women are emotional. Men are predators and hunters, and sexual harassment laws were put into place by people who want to stop men from doing what comes naturally to them." *Id*. That same day, Yuknis emailed Miller to report both interactions with Williams and expressed dissatisfaction with "being subject to this kind of conversation from a stranger" and the environment at Kickert. Miller Decl. ¶ 12. After receiving the

4

email, Kickert interviewed Williams. DSOF ¶ 34; Miller Dep. 116:13–118:2. Williams denied making the statements. *Id*. Despite the lack of other witnesses to corroborate the statements and despite Williams's denial, Kickert retrained Williams on Kickert's policies. *Id*.

### C. Debbie Cipkar

On December 12, 2018, Kemp and union steward Angela Nickerson met with Cipkar to discuss Kemp's ongoing complaints against Foster. DSOF ¶ 40. In response, Cipkar told Kemp that if Kemp felt uncomfortable being in Foster's vicinity in the driver's room, then Kemp could sit in the office with her husband (Taylor Kemp), who also worked for Kickert, *Id*. ¶¶ 40—41. Although Kemp was dissatisfied with the suggestion, she did use the office while waiting for her bus routes. DSOF ¶ 42; Kemp Dep. at 126:6–9.

On March 4, 2019, Kemp explains that when she complained to Cipkar about Foster's reported proximity to her while hugging another woman, Cipkar told Kemp, she "did not know what to tell [her]." Pl. Resp. DSOF ¶ 49 (citing R. 61 at 579, Pl's. Exh. 19, General Incident Rep. at 2).

In 2019, Kemp filed this lawsuit, asserting claims for a hostile work environment and retaliation under Title VII, as well as state law emotional-distress claim. The parties now cross-move for summary judgment.

### II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

#### A. Hostile Work Environment

To survive summary judgment on the hostile work environment claim, Kemp must offer enough evidence, viewed in her favor and with the benefit of reasonable inferences, that would allow a reasonable jury to find that (1) she was subject to unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was so severe or pervasive as to alter the conditions of employment

and create a hostile work environment; and (4) there is a basis for employer liability. *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 977 (2021).

Kickert argues (1) Kickert's prompt investigations of Kemp's complaints were reasonable remedial steps to avoid employer liability for co-worker harassment; and (2) Foster's, Williams's, and Cipkar's actions were neither severe nor pervasive enough to cause a hostile work environment. *See* R. 57, Def. Br. at 7—10.

### 1. Coworker Liability

The standard for a hostile work environment claim based on coworker conduct (as distinct from a supervisor) is a negligence standard: "if only coworkers were culpable for making a work environment hostile, the plaintiff must show that the employer has been negligent either in discovering or remedying the harassment." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011) (cleaned up),[4] *aff'd*, 570 U.S. 421 (2013). An employer "can avoid liability for coworker harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (cleaned up). An employer does not even have to successfully remedy the harassment to avoid liability, so long as the corrective action was prompt and reasonably likely to prevent reoccurrence. *See id.* at 637; *Vance*, 646 F.3d at 471 (holding that the employer

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

satisfied its Title VII obligations even though the corrective measures did not ultimately persuade coworkers to treat the plaintiff with respect).

Here, Kemp concedes that Kickert took immediate corrective action after her October 29, 2018 complaint against Foster. Pl. Resp. DSOF ¶¶ 22—25.[5] Kickert collected written statements from potential witnesses; updated Kemp, her husband, and her mother on the investigation; conducted interviews with witnesses; and issued a disciplinary warning and three-day suspension against Foster. *Id*. Kickert also investigated additional complaints made by Kemp in which she accused Foster of sitting down next to her in the driver's room and of hugging women in Kemp's vicinity. Miller Dep. at 96:2–97:19; 98:24–99:7; Miller Decl. ¶ 15. Kickert found the first complaint to not be actionable because a witness contradicted Kemp's version. Miller Dep. at 96:2–97:19; 98:16–23; 98:24–99:7. On the second allegation (hugging other women), Kickert advised Foster to "be more aware" and "stay away from" Kemp. Miller Decl. ¶ 16. Kemp also concedes that Kickert responded to her complaint against Williams after his December 2018 comment. Def. Reply Pl. Resp. DSOF ¶ 31. Kickert investigated the complaint by scheduling a meeting with Williams, and despite Williams's denial of the accusation, retrained Williams on Kickert's sexual harassment policies. Miller Decl. ¶ 9.

---

[5] Kemp alleges a dispute to ¶¶ 23 and 25. These disputes are irrelevant to whether Kickert took immediate corrective action after Kemp's complaint. As a general rule, if the Plaintiff purports to partially dispute a paragraph of the DSOF but does not, in fact, contradict any of the facts in that paragraph, the DSOF paragraph will be deemed admitted.

Kemp contends that the actions Kickert took were unsatisfactory, because Kickert never separated Foster from Kemp during their respective shifts. R. 60, Pl. Br. at 6–7. But "[i]t is not the role of court to determine whether an employer's expectations were fair, prudent, or reasonable." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). After Kickert took remedial actions, Kemp did not have physical or verbal contact with Foster. Miller Dep. 86:2–5; Kemp Dep. at 146:16–20, 150:1–2, 152:2–6. Nor did she identify any negative interactions with Williams.; In fact, Cipkar provided Kemp with an accommodation to sit with her husband in a separate office, rather than in the driver's room, if she felt uncomfortable. Miller Dep. 108:18–24. Kemp "would have preferred a different result but the emphasis of Title VII in this context is not on redress but on the prevention of future harm." *Lapka v. Chertoff*, 517 F.3d 974, 984 (7th Cir. 2008). Kemp has not presented evidence from which a reasonable jury could conclude that Kickert was negligent in preventing future harassment.

### 2. Supervisor Liability

Moving on to the incident involving Cipkar, it is easier for an employee to show employer liability for a *supervisor*'s misconduct, but the evidence still falls short here. It is true that employers are held strictly liable for a supervisor's misconduct if the harassment resulted in a tangible employment action, such as a discharge, demotion, change in work conditions, or a significant change in benefits. *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Remember that here Cipkar offered to accommodate Kemp by allowing her to sit with her husband in his office instead of the driver's room during her shift. That

is, at most, an inconvenience to Kemp. Kemp offers no evidence on how sitting in the office had an adverse effect on her job. An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss*, 816 F.3d at 918–19 (cleaned up). The Seventh Circuit has held that, absent any other concrete harms, a schedule change is "simply not materially adverse in the discrimination context." *Id.* at 918. Given the importance of the driver's room in completing Foster's job, *see* Def. Reply Pl. Resp. DSOF ¶ 14 (parties in agreement that "the Driver's Room is essential for employees to carry out their duties"), it would have been unreasonable to ban him from the driver's room completely.

To the extent that Kemp alleges that Cipkar's statements and actions are "sexist," Pl's. Br. at 9, there is no evidence that Cipkar's actions "culminate[d] in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998). The record shows instead that Kickert was responsive in addressing Kemp's complaints, and there is no evidence that coworker bias caused Cipkar (nor Kickert more broadly) to take adverse employment actions against Kemp for reasons related to bias. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011).[6]

---

[6]Kemp alleges additional retaliation claims based on Kickert management's inability to respond to her complaints or answer her emails. Am. Compl. ¶¶ 40—51, 57. As discussed above, Kickert took appropriate remedial actions.

### 3. Severe or Pervasive

The other flaw in the hostile work environment claim is that no jury could reasonably find that the alleged misconduct was "severe or pervasive" enough to alter the conditions of Kemp's employment. *Lapka*, 517 F.3d at 983. It is true that the Seventh Circuit has "repeatedly stressed that the phrase 'severe or pervasive' is disjunctive," and "even one act of harassment will suffice if it is egregious." *Id.* (cleaned up). Although "[d]etermining whether behavior crosses that threshold is not subject to a mathematically precise test," in order to "be severe or pervasive enough to create a hostile work environment, conduct must be extreme." *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018) (cleaned up). A court must consider all the relevant circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (cleaned up).

After considering the record evidence, the Court holds that the facts of this case fall far short of a hostile work environment, even when viewed in Kemp's favor. Neither Foster, nor Williams, nor Cipkar's activities rise to the level of actionable sexual harassment. Foster's nonconsensual touching of Kemp's lower back—although undoubtedly inappropriate—represented an isolated incident that was not so severe, for Title VII purposes, as to create an objectively hostile work environment. *See e.g., McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (pulling back plaintiff's tank top to look at her bra did not create a hostile work environment); *Hilt-*

11

*Dyson v. City of Chicago*, 282 F.3d 456, 463–64 (7th Cir. 2002) (rubbing plaintiff's back, squeezing her shoulders, and staring at her chest during uniform inspection was insufficient to create a hostile work environment).

The same goes for Williams's December 2018 diatribe and Cipkar's comments. Neither were sufficiently severe to qualify as creating a hostile work environment for Title VII purposes. *Costco Wholesale Corp.*, 903 F.3d at 625. Although Williams's comments were boorish and despicable, they did not rise to level of severity needed to prove a hostile environment. *See Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005) (holding that there was no actionable environment even though co-worker made sexual remarks about body parts, commented on female job applicants' physical appearance, and said that a female co-worker "needed a good f*ck"). Likewise, Cipkar simply took a remedial step by allowing Kemp to sit in the office with Kemp's husband if Kemp felt uncomfortable in the driver's room.

To the extent that Foster took other inappropriate actions, including approaching Kemp after his November 2 reprimand, Kickert is correct in pointing out that the remaining complaints did not involve any physical or verbal contact. R. 57, Def. Br. at 8; *see* PSOF ¶¶ 15, 21, 22, 24. Even viewing the evidence in Kemp's favor—as is required at this stage—those actions are insufficiently egregious to pass the severe or pervasive test. *See e.g., Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998). In *Adusumilli,* the severe-or-pervasive standard was not met despite several instances of misconduct committed by multiple colleagues. *Id.* at 361–62. There, the employee suffered the unwanted touching of the buttocks on one occasion, four other

12

touching incidents, and several other off-color comments. *Id.* The Seventh Circuit nonetheless held that these incidents were too isolated to establish a hostile work environment claim. *Id.* at 362. The incidents that Kemp alleges, even in their totality, are no more severe or pervasive. The summary judgment record does not allow a juror to find that Kickert created a hostile work environment claim. All in all, Kemp lacks evidence showing that the alleged conduct materially changed the conditions of her employment. For all these reasons, summary judgment is granted against the hostile work environment claim.

## B. Retaliation

Title VII bars employers from retaliating against their employees for complaining about discrimination. 42 U.S.C. § 2000e-3(a). For the retaliation claims to survive summary judgment, Kemp must show that a reasonable jury could find that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was motivated by the protected activity. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

### 1. Adverse Employment Actions

A retaliation claim requires that the plaintiff suffered a "materially adverse employment action." *Boss*, 816 F.3d at 918 (7th Cir. 2016). But this is not the same as an adverse action for discrimination claims. Instead, a materially adverse action for retaliation purposes "need not be one that affects the terms and conditions of employment." *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (cleaned up). To assess the materiality of an employment action, courts simply ask "whether it well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Boss,* 816 F.3d at 918. Having said that, Title VII does not set forth a "general civility code for the American workplace," so "petty slights, minor annoyances, and bad manners" do not qualify as materially adverse actions. *Id.*

Here, even when viewing the evidence in Kemp's favor, she has not shown that the remedial steps taken by Kickert would dissuade a reasonable employee from asserting a discrimination claim. Kemp alleges that she was retaliated against when Cipkra refused to protect her from Foster by saying, "I don't know what to tell you," after she continued to complain about Foster "harassing" her in the driver's room. Pl. Resp. DSOF ¶ 49. But that is a "petty slight" rather than a materially adverse action. As previously discussed, the record evidence demonstrates that Kickert investigated the complaints made by Kemp and took remedial steps by issuing warnings, retraining, and reiterating its sexual harassment policy toward Foster and Williams.

Moreover, the relocation to Kemp's office during her wait time that Cipkra offered is not a materially adverse employment action. Kickert accurately says that the accommodation was a suggestion, not a mandate. Def. Br. at 11; *see Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1029–30 (7th Cir. 2004) (describing "no evidence" that "making [the plaintiff] take his breaks in the transfer station was an inappropriate remedial measure because it was a 'less desirable' break location"). To be sure, "remedial action that makes the victim worse off is ineffective *per se,*" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1049 (7th Cir. 2000). Kemp has not, however, "established that [she] would have been injured by [Kickert's] proposed

14

response." *Id*. There is no evidence in the record that Kemp ever suffered impairment in carrying out her employment duties as a result of accepting the accommodation. For example, Kemp never alleges that Foster accessed the management office when she was present. Consequently, Kemp must suffer something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss*, 816 F.3d at 918–19.

### 2. Causal Connection

Another hurdle to Kemp's retaliation claim is to show that a reasonable jury could find that the protected activity (her complaints against Foster, Williams, and eventually Cipkra) was the but-for cause of Kickert's adverse action. In other words, Kemp must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action" of the employer. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Critically, Kemp never develops an argument—beyond scattered conclusory statements—that Cipkar's relatively innocuous comments were Kickert's way of retaliating against Kemp for her complaints. Conclusory assertions do not constitute evidence, and so cannot overcome summary judgment. *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir.2015); *Montgomery v. Am. Airlines*, 626 F.3d 382, 389 (7th Cir. 2010).[7]

---

[7] Because Kickert is entitled to summary judgment even when the evidence is viewed in Kemp's favor, by definition Kemp's cross-motion for summary judgment on her federal claims must be denied.

### C. Intentional Infliction of Emotional Distress

Given the Court's conclusion that Kickert is entitled to summary judgment on the federal claims in this case, the Court must consider whether to exercise supplemental jurisdiction over the emotional-distress claim, which arises under Illinois common law. Remember that jurisdiction over this state law claim is premised on supplemental jurisdiction, which is codified in 28 U.S.C. § 1367(a).

Although Section 1367 authorizes federal courts to exercise supplemental jurisdiction over state-law claims, this does not mean that federal courts *must* exercise supplemental jurisdiction in all cases. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Rather, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right[.]" *Id.* (cleaned up). If federal claims drop out, the presumption is to let go of the state law claim: "[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed. There is no good reason to hang onto the state claims: there will be no statute of limitations bar because of Illinois's savings statute, 735 ILCS 5/13-217 (providing that when a federal court relinquishes supplemental jurisdiction over state law claims, the plaintiff has one year following the dismissal to file those claims in state court).

Relinquishing supplemental jurisdiction is appropriate here. The federal claims have been resolved, and the remaining claim involves various issues of state law, such as whether Kemp's allegations give rise to relief under state law and whether the claim against Kickert would be subject to preemption under the Illinois Human Rights Act. Comity dictates that the state courts should have the opportunity to address those questions of state law. *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."). So the Court will relinquish supplemental jurisdiction by dismissing the emotional-distress claim without prejudice.

## IV. Conclusion

The Defendant's summary judgment motion is granted on the federal claims, and the Court relinquishes jurisdiction over the emotional-distress claim. The Plaintiff's cross-motion of summary judgment is denied.

ENTERED:

                        s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2021